# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**THE HUNTINGTON NATIONAL BANK,**

    Plaintiff,

v.                                                                             Civil Action No. 2:12-CV-7
                                                                            (BAILEY)

**MARK J. CAROLL,**

    Defendant/Third-Party Plaintiff,

v.

**AMHERST CAPITAL PARTNERS, LLC,
d/b/a AMHERST PARTNERS, LLC,**

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER
## PERMITTING INTERVENTION OF APPALACHIAN FOREST PRODUCTS, INC.

Pending before this Court are third-party defendant Amherst Capital Partners, LLC, d/b/a Amherst Partners, LLC's ("Amherst") Motion to Dismiss Third-Party Complaint [Doc. 12], filed April 26, 2012; plaintiff The Huntington National Bank's ("Huntington") Motion to Dismiss Defendant Mark. J. Caroll's Counterclaims [Doc. 13], filed April 26, 2012; absentee Appalachian Forest Products, Inc.'s ("Appalachian") Motion to Intervene [Doc. 15], filed May 3, 2012; and Huntington's Motion to Strike [Doc. 19], filed May 17, 2012. Huntington and Amherst responded to Appalachian's Motion to Intervene on May 17, 2012 [Docs. 20 & 21], and Appalachian replied on May 23, 2012 [Doc. 22]. Having reviewed the record and considered the arguments of the parties, this Court concludes that Appalachian's motion should be **GRANTED** and the other motions should be **DENIED AS MOOT**.

1

**BACKGROUND**

I.  **Factual Allegations**

In November 2005, a West Virginia timber company named Appalachian Forest Products, Inc. ("Appalachian"), borrowed $2 million from The Huntington National Bank ("Huntington"). Appalachian agreed to pay Huntington in full by May 16, 2018.

In the spring of 2006, Appalachian's sole shareholder, Mark. J. Caroll, met with Huntington on behalf of Appalachian and requested additional financing of $1 million to complete the construction of a saw mill. Huntington did not make the additional financing available to Appalachian until after the saw mill was constructed and operational. Specifically, in July 2006, Appalachian entered into two additional loan transactions with Huntington. Appalachian borrowed $1 million to be paid in full by May 16, 2013, and $1.25 million to be paid in full by May 16, 2018. The delay in financing caused Appalachian substantial financial hardship.

Later in 2006, Huntington informed Appalachian that it would be subject to a "work out" with the bank's "Special Assets Division." In addition, Huntington provided Appalachian with an ultimatum that if it did not hire a financial consultant recommended by Huntington, the bank would call the loans in default and foreclose upon Appalachian's assets. As a result, Appalachian hired Amherst Partners, LLC ("Amherst"), a Michigan limited liability company by entering into a letter agreement dated January 26, 2007. Pursuant to the letter agreement, Amherst agreed to (1) assist in discussions and negotiations with Huntington to obtain the bank's continued support under the current loan agreement and any amendments to the agreement, (2) evaluate current processes for job costing and make recommendations for job costing process improvement, (3) review

current financial data to develop a 13-week cash flow, (4) review historical financial data and assist in preparation of the 2007 forecast and budget, and (5) review operations and procedures to determine how current initiatives could impact Appalachian's cash flow profitability and liquidity.

At Huntington's direction, Amherst redesigned Appalachian's accounting system, and in particular, the method by which Appalachian's lumber and logging inventory was tracked. However, the system employed by Amherst was not able to accurately account for Appalachian's inventory. As a result, Appalachian was not able to properly run its business and suffered severe financial distress.

In May 2008, Appalachian borrowed $4.5 million from Huntington to be paid in full by May 31, 2009. On May 16, 2008, Caroll entered into a written commercial guaranty pursuant to which he personally guaranteed payment on all four of the Appalachian-Huntington loans. On December 1, 2008, Appalachian's corporate charter was revoked.

In June or July 2009, Huntington contacted Caroll and demanded that he sign a release on behalf of himself and Appalachian, releasing Huntington of any lender liability claims. Huntington further informed Caroll that failure to sign the release would result in its foreclosure upon all of Appalachian's assets, thereby causing Appalachian to go out of business. Caroll refused to sign the release.

On October 7, 2009, Appalachian's property was sold at a foreclosure sale to Mike Ross, Inc. The proceeds were insufficient to pay Huntington or the West Virginia Economic Development Authority ("WVEDA"), which also had liens against Appalachian's property.

As of February 9, 2012, Appalachian owes Huntington approximately $4.6 million plus interest but has been unable to pay.

## II. Procedural History

On February 9, 2012, Huntington filed this diversity suit against Caroll, seeking to enforce the guaranty agreements as to each of the four Appalachian-Huntington loans [Doc. 3]. On April 2, 2012, Caroll answered the Complaint and asserted counterclaims against Huntington and third-party claims against Amherst [Doc. 8]. Caroll alleges that Huntington breached the duty of good faith and fair dealing implied in the Appalachian-Huntington loan agreements and is liable for punitive damages. Caroll alleges that Amherst breached the Appalachian-Amherst letter agreement by failing to implement a working inventory system and is subject to punitive damages.

On April 26, 2012, Amherst and Huntington moved to dismiss Caroll's claims for failure to state a claim because Appalachian, not Caroll, was the party to their respective contracts [Docs. 12 & 13]. On May 3, 2012, Appalachian filed the instant Motion to Intervene [Doc. 15]. Specifically, Appalachian asks this Court to permit it to intervene and join Caroll as a counterclaimant and third-party plaintiff pursuant to Federal Rule 24(b)(1)(B) of Civil Procedure [Doc. 16]. Appalachian states that its proposed pleading is attached to its motion as Exhibit A. Instead, Appalachian filed its proposed Counterclaim and Third-Party Complaint [Doc. 17] as a separate document. This prompted Huntington to file the instant Motion to Strike [Doc. 19] because there had been no ruling on intervention.

On May 17, 2012, Huntington and Amherst filed briefs opposing intervention for four reasons, namely: (1) as a dissolved corporation, Appalachian lacks the legal capacity to pursue its claims, (2) there are no material common questions of law or fact with Huntington's claims, (3) intervention will cause prejudice by complicating the main action

with claims that Appalachian could have pursued during the foreclosure process, and (4) intervention will cause undue delay [Docs. 20 & 21].

On May 23, 2012, Appalachian filed a reply brief in support of intervention. First, Appalachian argues that the West Virginia Business Corporation Act permits it to pursue its claims despite dissolution. Second, Appalachian contends that there is a common question of law because success on its claims may preclude recovery on Huntington's claims in the main action. Third, Appalachian argues that there is no prejudice because it was not required to assert its claims in the previous non-judicial foreclosure proceedings. Finally, Appalachian claims permitting its intervention early in this action will not cause undue delay.

The deadline for joinder and amendments is July 2, 2012 [Doc. 23].

## **DISCUSSION**

### I. **Applicable Standard**

Pursuant to Rule 24(b), "the court <u>may</u> permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that share with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1) (emphasis added). Under this same section, "the court <u>may</u> permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2) (emphasis added). Finally, in determining whether permissive intervention is proper, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

5

## II. Analysis

### A. Legal Capacity

As an initial matter, Huntington and Amherst argue that Appalachian's dissolved status precludes intervention. This Court disagrees.

According to Federal Rule 17(b)(2) of Civil Procedure, the capacity of a corporation to sue is determined by the law under which it was organized. Appalachian was incorporated in West Virginia. Pursuant to the West Virginia Business Corporation Act, "[d]issolution of a corporation does not . . . prevent commencement of a proceeding by or against the corporation in its corporate name." W.Va. Code § 31D-14-1405(b)(5). While the Act limits the claims that can be brought against a dissolved corporation, see W.Va. Code § 31-D-14-1407, there is no concomitant limitation on the claims a dissolved corporation can commence. As such, this Court concludes that Appalachian possesses the legal capacity for its proposed intervention.

### B. Permissive Intervention

In its motion to intervene, Appalachian argues that it should be permitted to intervene pursuant to Rule 24(b)(1)(B) because it "has a claim or defense that shares with the main action a common question of law or fact" and because intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B) & 24(b)(3). This Court agrees.

#### 1. Common Question of Law or Fact

First, this Court finds that the common question of law presented by Appalachian's proposed claims and Huntington's claims in the main action is whether and to what extent the amount owing on the Appalachian-Huntington loans can be collected. Should

6

Appalachian succeed on its claims, Huntington may be precluded from pursuing its claims against Caroll. Accordingly, Appalachian should be permitted to intervene if such intervention will not cause prejudice or undue delay.

### 2. Prejudice / Undue Delay

Next, this Court finds that the proposed intervention will not cause prejudice or undue delay. With regard to prejudice, this Court notes that intervention may be allowed even though the intervenor also raises other issues that are not presented by the main action. See **Kootenai Tribe of Idaho v. Veneman**, 313 F.3d 1094, 1110 (9th Cir. 2002). In addition, Huntington has identified no authority that precludes Appalachian's claims based upon its failure to raise those claims in defense of foreclosure. As for undue delay, this Court observes that this action was filed less than three months ago and the deadline for joinder and amendments has yet to pass. Accordingly, Appalachian should be permitted to intervene as a counterclaimant and third-party plaintiff.

### 3. Proposed Pleading

Finally, this Court addresses the proprietary of Appalachian's proposed pleading, which this Court believes Appalachian intended to file as an exhibit to its motion, not as a separate document. While an intervenor is permitted to assert counterclaims and third-party claims, see **United States v. Fidelity & Deposit Co. of Md.**, 22 F.R.D. 248 (M.D. Pa. 1958); (intervenor as counterclaimant); **United States to Use of & for Benefit of Foster-Wheeler Corp. v. American Sur. Co.**, 25 F.Supp.700 (E.D.N.Y. 1938) (intervenor as third-party plaintiff), Appalachian improperly proposes to join Caroll in his claims. However, as accurately argued in Huntington's and Amherst's motions to dismiss, Caroll's claims are unsupported in law because he was not a party to, nor an intended beneficiary of, the loans

7

or the consulting agreement. See W.Va. Code § 55-8-12; *see also* **Robinson v. Cabell Huntington Hosp., Inc.**, 201 W.Va. 455, 498 S.E.2d 27 (1997). Accordingly, Appalachian shall file a new Counterclaim and Third-Party Complaint in which it is the sole counterclaimant and third-party plaintiff. As a result, Caroll's Counterclaim and Third-Party Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that Appalachian's Motion to Intervene **[Doc. 15]** should be, and hereby is, **GRANTED**. Accordingly, Appalachian is hereby **ORDERED** to file forthwith a new Counterclaim and Third-Party Complaint, under the conditions described above. In this regard, Caroll's Counterclaim and Third-Party Complaint **[Doc. 8]** is hereby **DISMISSED**. As a result, Amherst's Motion to Dismiss **[Doc. 12]** and Huntington's Motion to Dismiss **[Doc. 13]** are hereby **DENIED AS MOOT**. Similarly, Huntington's Motion to Strike **[Doc. 19]** is hereby **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 27, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE